*This opinion is subject to revision before final publication in the Pacific Reporter*

**2026 UT 20**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellant,*

*v.*

ANTHONY ERNESTO JARAMILLO,
*Appellee.*

No. 20240880
Heard March 4, 2026
Filed July 23, 2026[*]

On Certification from the Court of Appeals

Second District Court, Ogden
The Honorable Craig Hall
No. 231903420

Attorneys:

Derek E. Brown, Att'y Gen., Jonathan S. Bauer, Asst. Solic. Gen.,
Salt Lake City, for appellant

Troy L. Booher, LaShel Shaw, Caroline A. Olsen, Salt Lake City,
Ron K. Nichols, Ogden, for appellee

JUSTICE NIELSEN authored the opinion of the Court, in which
JUSTICE PETERSEN, ASSOCIATE CHIEF JUSTICE POHLMAN, JUDGE
MORTENSEN, and JUDGE BRERETON joined.

Before this case was decided, CHIEF JUSTICE DURRANT recused
himself from this case and JUSTICE HAGEN stepped down from the
court. COURT OF APPEALS JUDGE DAVID N. MORTENSEN and

---

[*] As of January 31, 2026, "The Supreme Court consists of seven justices." UTAH CODE § 78A-3-101(1). Pursuant to Utah Supreme Court Standing Order No. 18, this court sat and rendered judgment in this matter as a division of five justices.

DISTRICT COURT JUDGE HEATHER BRERETON, having reviewed the briefs and listened to a recording of the oral argument, substituted for CHIEF JUSTICE DURRANT and JUSTICE HAGEN and participated fully in this decision.

JUSTICE JORGENSEN and JUSTICE DENT became members of the Court after oral argument in this matter and did not participate.

———————

JUSTICE NIELSEN, opinion of the Court:

## INTRODUCTION

¶1    Police pulled Anthony Ernesto Jaramillo over for a traffic violation. During the stop, they smelled marijuana and searched the car. Inside, they found a gun and some drugs. Jaramillo's passenger—his brother—said that there would be evidence of drug possession and use in their home. Based on this information, police applied for two warrants: one to search the Jaramillo home for evidence of drug dealing and another to draw Jaramillo's blood to test for drugs and a DNA swab to match Jaramillo to the gun.

¶2    When applying for the warrants, the officer meant to, but did not, ask for authorization to search during nighttime hours (between 10:00 p.m. and 6:00 a.m.). Had the officer asked for nighttime authorization, the magistrate likely would have given it. The magistrate granted both warrant requests, which given the applications, authorized searches during daytime hours (between 6:00 a.m. and 10:00 p.m.). Police executed both warrants at nighttime, which violated rule 40 of the Utah Rules of Criminal Procedure.

¶3    In *State v. Fixel*, 744 P.2d 1366 (Utah 1987), and *State v. Rowe*, 850 P.2d 427 (Utah 1992), we held that a violation of our criminal procedure rules requires suppression in only three circumstances: where (1) the rule violation also violates the federal Constitution; (2) the officer acts in bad faith; or (3) the warrant would not have been granted—or execution would have been less abrasive—had the rule been complied with.

¶4    The district court suppressed the evidence here after ruling that (2) and (3) did not apply and without reaching (1). That is, it suppressed based solely on the rule violation. This contradicts our decisions in *Fixel* and *Rowe*. We reverse.

## BACKGROUND[1]

¶5 Late one evening, police pulled Jaramillo over for a traffic violation. After smelling a marijuana odor coming from inside Jaramillo's car, the officers searched the vehicle and found a handgun under the driver's seat and a backpack containing marijuana and psilocybin mushrooms. The only passenger in the car, Jaramillo's younger brother, told the officers that the backpack belonged to him and that he would likely have "papers and things" back at home. Police arrested Jaramillo during the stop.

¶6 Based on all this information, the arresting officer (Officer) sought a search warrant for Jaramillo's residence. He applied for the warrant through a computer program called the Utah Criminal Justice Information System (UCJIS). Though Officer intended to request authorization to execute the warrant at night—between 10 p.m. and 6 a.m. under rule 40(a)(1) of the Utah Rules of Criminal Procedure—Officer inadvertently failed to select a box that would have prompted him to add further justification for nighttime execution of the warrant. Had he clicked the box, he would have provided justification for a nighttime search. Accordingly, Officer's UCJIS-generated affidavit requested a search warrant authorizing execution only "in the daytime" and provided no justification for nighttime execution. A magistrate issued the requested warrant a few minutes later. And since Officer requested a daytime execution, the warrant provided for only daytime execution.

¶7 Despite the express daytime limitation on the warrant, officers executed the warrant in the nighttime. According to the Amended Information, officers seized from Jaramillo's room more marijuana and psilocybin as well as a box for a handgun matching the one found in Jaramillo's car.

¶8 A couple of hours later, Officer submitted an affidavit for a second search warrant—this time to collect a blood sample and

---

[1] This case is on interlocutory review. We recite the facts from the evidentiary hearing consistent with the trial court's findings. *State v. Price*, 2012 UT 7, ¶ 2 n.1, 270 P.3d 527. But we emphasize that the criminal allegations against Jaramillo are not proved and that he is presumed innocent. *See* UTAH CODE § 76-1-501(1) ("A defendant in a criminal proceeding is presumed to be innocent until each element of the offense charged against him is proved beyond a reasonable doubt.").

DNA swabs from Jaramillo. But, again, Officer failed to select the box to request authorization for nighttime execution in the UCJIS program, resulting in an affidavit requesting daytime execution only. Officer expressed concern about evidence of drug use metabolizing[2] with the passage of time but conceded that there was no "urgency that night for the search of [Jaramillo's] bodily fluids." And, again, the magistrate issued a daytime warrant that police executed at night.

¶9     The State charged Jaramillo with four counts of possession of a controlled substance with intent to distribute and one count of possession of a firearm by a restricted person. Jaramillo moved to suppress the evidence obtained under both search warrants. He argued that the nighttime execution of the two daytime-only search warrants violated both rule 40(e)(1) of the Utah Rules of Criminal Procedure and the Fourth Amendment of the United States Constitution. The district court held an evidentiary hearing on the motion at which Officer testified about the investigation.

¶10   The district court granted Jaramillo's motion to suppress. In its findings of fact, the district court found that Officer did not request authorization for nighttime execution for either warrant, both warrants were limited to daytime-only service, and both warrants were served during the nighttime. The court also found that while Officer intended that the warrants be executed at night, "he inadvertently failed to check the box on [UCJIS]" that would have requested nighttime authorization.

¶11   In its analysis and conclusions of law, the court began by noting that the execution of search warrants by government officials is subject to "Fourth Amendment reasonableness requirements." (Citing *United States v. Green*, 178 F.3d 1099 (10th Cir. 1999).) The court also observed that, by enacting rule 40(e)(1), the drafters "have specifically mandated that warrants shall be served in the daytime," unless authorized by a magistrate. The court then addressed what it perceived to be the State's two primary arguments against suppression: (1) Officer intended to

---

[2] When substances are ingested in the body, they are broken down over time in a sum of processes called metabolism. *See Metabolism*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/metabolism (last visited July 13, 2026) (defining "metabolism" as "the sum of the processes by which a particular substance is handled in the living body").

request nighttime authorization and his failure to do so was a technical and ministerial mistake not warranting suppression; and (2) because the magistrate likely would have authorized nighttime execution of the two warrants had Officer requested, Jaramillo was not prejudiced.

¶12 Addressing the State's first argument, the court acknowledged that ministerial or technical mistakes in preparing or executing search warrants were "insufficient to justify the extreme sanction of suppression." (Citing *State v. Valle-Flores*, 2005 UT App 290, ¶ 4, 117 P.3d 1069.) The court found that "[t]here is absolutely no evidence to suggest that [Officer] had any malicious intent, or tried somehow to 'get around' the default daytime service requirement."

¶13 But the court could not "overlook the fact that a request for nighttime service was not made" and that both warrants expressly mandated service "in the daytime." It observed that by enacting rule 40(e)(1), the drafters "decided . . . to not just rely on common law regarding the 'reasonableness' of nighttime warrant service" and "were sufficiently concerned about nighttime warrant service that [they] went above and beyond protections provided in case law." Accordingly, the court concluded that although Officer's mistake appears technical and ministerial, it could not "ignore . . . the plain language" of rule 40(e)(1) that requires a magistrate to authorize nighttime execution and "the high priority [the drafters] have put on making sure the analysis happens."

¶14 Addressing the State's second argument, the court recognized that "it was certainly possible that had [Officer] . . . request[ed] nighttime service of the warrants, such requests would have been granted." The court further acknowledged that, in its own experience, "nighttime service of warrants is authorized on a rather frequent basis." But, again, the court emphasized that the decision to authorize such a search "is not a decision a law enforcement officer can make on their own." It again observed that the drafters, through rule 40(e)(1), intended that nighttime search requests "receive an additional layer of scrutiny," as nighttime searches "do raise special concerns relating to invasion of privacy." The court therefore reasoned that even if it was likely that the magistrate would have granted nighttime authorization here, the step of requesting such authorization "is a step that cannot be skipped."

¶15 The court also rejected the State's argument that Jaramillo was not prejudiced because the execution of both warrants was peaceful. While acknowledging that the searches here did not involve the sort of indignity meant to be avoided by rule 40(e)(1)—such as "residents being roused from sleep by a heavy-handed police entry"—the court reasoned it "would be unfortunate and illogical for the courts to enforce [rule 40(e)(1)] only if the nighttime service was violent confrontation, or otherwise went awry." The court could not "excuse non-compliance of [r]ule 40(e)(1) simply because the execution of the nighttime warrant went well." To do so, in its view, would be "perilous." The court cited *O'Rourke v. City of Norman*, a case in which the Tenth Circuit held that a nighttime execution of a daytime-only search warrant was unconstitutional, 875 F.2d 1465, 1474–75 (10th Cir. 1989), as an example of where a federal court "ruled similarly." Quoting *O'Rourke*, the district court stated: "To determine that a warrant limited to daytime execution authorizes the nighttime search of a home is to completely eviscerate the issuing magistrate's determination of reasonableness." (Quoting *id.* at 1474.)

¶16 Ultimately, despite the lack of bad faith and the likelihood that the magistrate would have authorized nighttime execution of both search warrants had Officer requested it, the district court concluded that leaving the magistrate out of the decision required suppression under rule 40(e)(1).

¶17 The State petitioned the court of appeals for interlocutory review of the district court's granting of Jaramillo's motion to suppress. The court of appeals granted the State's petition and certified the case to us.

## ISSUE AND STANDARD OF REVIEW

¶18 We are asked to decide whether the violation of rule 40(e)(1) of the Utah Rules of Criminal Procedure requires suppression in this case. "We review a district court's ruling on a motion to suppress for correctness, including its application of the law to the facts." *State v. Tran*, 2024 UT 7, ¶ 17, 545 P.3d 248 (cleaned up).

## ANALYSIS

I. THE DISTRICT COURT ERRED BY SUPPRESSING EVIDENCE BASED ON THE VIOLATION OF RULE 40(e)(1) ALONE

¶19 Rule 40(e)(1) of the Utah Rules of Criminal Procedure provides that when issuing a search warrant, the default is for

daytime execution; nighttime execution is proper only if "the affidavit or recorded testimony states sufficient grounds to believe a search is necessary in the night to seize the property prior to its being concealed, destroyed, damaged, altered, or for other good reason" and the magistrate grants the request. UTAH R. CRIM. P. 40(e)(1); *see also id.* R. 40(a)(1) (defining "[d]aytime" as "the hours beginning at 6 a.m. and ending at 10 p.m. local time").

¶20 Here, it is undisputed that Officer's execution of two daytime-only search warrants at night violated rule 40(e)(1). But the State argues that under the framework set out by our decisions in *State v. Fixel*, 744 P.2d 1366 (Utah 1987), and *State v. Rowe*, 850 P.2d 427 (Utah 1992), a violation of rule 40(e)(1) alone does not justify suppression. And it contends that the district court erred by suppressing evidence based on just the rule violation.

¶21 We agree. In *Fixel* and *Rowe*, we held that suppression is appropriate "only where the violation also implicates fundamental, constitutional concerns, is conducted in bad-faith[,] or has substantially prejudiced the defendant." *Rowe*, 850 P.2d at 429 (quoting *Fixel*, 744 P.2d at 1369). As we explain below, the district court suppressed evidence for a violation of rule 40(e)(1) without concluding that the rule violation infringed on Jaramillo's constitutional rights, was the result of bad-faith policing, or substantially prejudiced Jaramillo. And on this case's interlocutory posture, we decline to assess alternative grounds for affirmance. We therefore reverse.

¶22 We begin by reviewing the standard for suppressing evidence obtained in violation of our rules of criminal procedure provided by *Fixel* and *Rowe*. We then apply that standard here, ultimately reversing the district court's granting of Jaramillo's motion to suppress.

*A. Under* Fixel *and* Rowe, *Suppression for Violation of a Procedural Rule Is Warranted Only Where the Violation Implicates Fundamental Constitutional Concerns, Is in Bad Faith, or Substantially Prejudices the Defendant*

¶23 In *Fixel*, we were asked to decide whether suppression was an appropriate remedy for a law enforcement officer's noncompliance with a statute that defined the scope of his authority. 744 P.2d at 1367–69. There, a Provo City officer conducted an undercover controlled buy of marijuana from a defendant in Pleasant Grove. *Id.* at 1367. Both parties agreed that the officer acted outside of Provo City's jurisdiction in violation of

a state statute. *Id.* at 1367–68 (citing UTAH CODE § 77-9-3 (1982)). Fixel argued that the statutory violation made the search illegal, which in turn made the evidence excludable. *Id.* We disagreed, holding that the suppression of the marijuana "would be a remedy out of all proportion to the benefits gained to the end of obtaining justice while preserving individual liberties unimpaired." *Id.* at 1369 (cleaned up).

¶24 In so holding, we found "persuasive" the standard adopted by the Pennsylvania Supreme Court in *Commonwealth v. Mason*, 490 A.2d 421 (Pa. 1985):

> Only a "fundamental" violation of a rule of criminal procedure requires automatic suppression, and a violation is "fundamental" only where it, in effect, renders the search unconstitutional under traditional fourth amendment standards. Where the alleged violation is not "fundamental" suppression is required only where:

> (1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision of the rule.

*Fixel*, 744 P.2d at 1368–69 (cleaned up) (quoting *Mason*, 490 A.2d at 426). Thus, "[i]t is only where the violation also implicates fundamental, constitutional concerns, is conducted in bad-faith[,] or has substantially prejudiced the defendant that exclusion *may* be an appropriate remedy." *Id.* at 1369 (quoting *Mason*, 490 A.2d at 426).

¶25 A few years later, in *Rowe*, we applied the same standard to a case like the one before us. There, the search warrant authorized entry "day or night," but the supporting affidavit did not justify a nighttime search. 850 P.2d at 427–29. This violated rule 40(e)(1)'s substantively identical statutory predecessor. *Id.* at 427 (citing UTAH CODE § 77-23-5 (1992)).[3] Based on the statutory

---

[3] *Compare* UTAH R. CRIM. P. 40(e)(1) ("The magistrate shall insert a direction in the warrant that it be served in the daytime, unless the affidavit or recorded testimony states sufficient grounds to believe a search is necessary in the night to seize the property prior

(continued . . .)

violation, the court of appeals held that the evidence obtained from the search warrant should have been suppressed. *Id.* at 428.

¶26 Again, we disagreed. Quoting *Fixel*, we reiterated that "it is only where the violation also implicates fundamental, constitutional concerns, is conducted in bad-faith[,] or has substantially prejudiced the defendant that exclusion *may* be an appropriate remedy." *Id.* at 429 (cleaned up). Walking through the standard, we first concluded that the defendant did not show a fundamental violation of her constitutional rights. *Id.* at 429–30. We found it "of particular significance" that in addition to a search warrant for the residence, there was a valid arrest warrant for another resident that authorized entry into the home during the night or day. *Id.* Holding that there was no fundamental violation of the defendant's constitutional rights, we concluded that the statutory violation "merely constituted a procedural violation." *Id.* at 430. And a procedural violation requires suppression "only where it demonstrates prejudice to the defendant or a lack of good faith on the part of the police." *Id.* Having concluded that the defendant was not prejudiced for the same reason there was no fundamental violation, and in the absence of bad faith,[4] we held that the court of appeals erred in concluding that the evidence should have been suppressed. *Id.*

¶27 To sum up: under *Fixel* and *Rowe*, suppression of evidence obtained by a search in violation of our rules of criminal procedure is appropriate only when: (1) it is a fundamental violation, meaning that it violated the defendant's constitutional rights; (2) the defendant was prejudiced by the search such that the search would not have occurred or would have been less abrasive absent the rule

---

to its being concealed, destroyed, damaged, altered, or for other good reason; in which case the magistrate may insert a direction that it be served any time of the day or night."), *with* UTAH CODE § 77-23-5 (1992) ("The magistrate must insert a direction in the warrant that it be served in the daytime, unless the affidavits or oral testimony state a reasonable cause to believe a search is necessary in the night to seize the property prior to it being concealed, destroyed, damaged or altered, or for other good reason; in which case he may insert a direction that it be served any time of the day or night.").

[4] We did not assess whether there was a lack of good faith on the part of the police. *See Rowe*, 850 P.2d at 429–30.

violation; or (3) law enforcement violated the rule in bad faith by intentionally and deliberately disregarding it. *See id.* at 429; *Fixel*, 744 P.2d at 1369.

B. *The District Court Wrongly Suppressed Evidence Under Rule 40(e)(1) Without Finding a Constitutional Violation, Bad Faith, or Prejudice to Jaramillo*

¶28 We now turn to whether the district court erred when it suppressed evidence obtained in violation of rule 40(e)(1). The State argues that the district court suppressed evidence for the violation of the rule alone without finding any of the circumstances permitting suppression under *Rowe*. We agree.

¶29 While the district court's order suppressing evidence appeared to at least partially engage in the analysis required by *Rowe*, the court rested its conclusion on the violations of rule 40(e)(1) alone without also finding that the violation infringed upon Jaramillo's constitutional rights, was committed in bad faith, or prejudiced Jaramillo.

¶30 The court began its analysis with the text of rule 40(e)(1) and then addressed what it considered to be the State's two arguments against suppression: (1) that the rule violation was a technical and ministerial mistake and (2) had nighttime authorization of the two warrants been requested, it would have been granted. In other words, the court addressed the State's arguments, under *Rowe*, that the violations of rule 40(e)(1) were neither committed in bad faith nor prejudiced Jaramillo. *See Rowe*, 850 P.2d at 429.

¶31 Addressing the lack of bad faith argument, the district court agreed with the State that "[t]here was absolutely no evidence to suggest [Officer] had any malicious intent, or tried to somehow 'get around' the default daytime service requirement," when he failed to request nighttime authorization. However, the court stated that it could not "overlook the fact that a request for nighttime service was not made." The court reasoned that by enacting rule 40(e)(1) the drafters "decided . . . to not just rely on common law regarding the 'reasonableness' of nighttime warrant service" and "were sufficiently concerned about nighttime warrant service that [they] went above and beyond protections provided in case law." As such, even though the court accepted that Officer did not act in bad faith, it concluded that it could not "ignore . . . the plain language" of rule 40(e)(1) requiring a magistrate to determine the reasonableness of a nighttime search.

10

¶32 Similarly, in addressing the lack of prejudice argument, the district court agreed with the State that "it was certainly possible that had [Officer] . . . request[ed] nighttime service of the warrants, such requests would have been granted." The court even observed that in its experience "nighttime service of warrants is authorized on a rather frequent basis." The court further recognized that the searches here were non-confrontational and conducted peacefully. However, the court concluded that it could not "excuse non-compliance of [r]ule 40(e)(1) simply because the execution of the nighttime warrant went well."

¶33 In substance, the district court found that suppression was not justified under two of the three circumstances in *Fixel* and *Rowe* (bad faith and substantial prejudice) and did not address the third (violation of constitutional rights). Under *Fixel* and *Rowe*, suppression for the mere rule violation was unwarranted.

¶34 Jaramillo argues that the district court's order can be read as finding violations of both rule 40(e)(1) and the Fourth Amendment. We disagree. While the district court acknowledged that the searches here were subject to Fourth Amendment reasonableness requirements and cited to cases finding unauthorized nighttime searches unconstitutional, *see O'Rourke v. City of Norman*, 875 F.2d 1465 (10th Cir. 1989), it never ruled that the searches were unconstitutional. Instead, as explained above, the district court repeatedly emphasized that the drafters "decided to not just rely on common law regarding the 'reasonableness' of nighttime warrant service" and "went *above and beyond* protections provided in case law" by enacting rule 40(e)(1). (Emphasis added.) These observations by the court would make little sense if it had held that the searches here violated the Fourth Amendment.

¶35 We therefore conclude that the district court's order suppressing evidence rested its analysis on the violation of rule 40(e)(1) alone without also finding that the violation implicated Jaramillo's constitutional rights, was committed in bad faith, or prejudiced Jaramillo. Under the analysis required by *Rowe*, this was error. On interlocutory review, we decline Jaramillo's invitation to affirm on alternative grounds—i.e., by deciding whether the searches here violated the Fourth Amendment or section 14 of article I of the Utah Constitution. Accordingly, we reverse and remand for further proceedings.

## CONCLUSION

¶36   Under *State v. Rowe*, 850 P.2d 427 (Utah 1992), suppression of evidence is not an appropriate remedy for a violation of rule 40(e)(1) of the Utah Rules of Criminal Procedure unless that violation also infringed upon the defendant's constitutional rights, was committed in bad faith, or prejudiced the defendant. The district court ruled that two of those did not apply and did not reach the third, suppressing evidence for the violation of the rule alone. We therefore reverse and remand for further proceedings consistent with this opinion.

————————